UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW E. ROTH, <br><br> Plaintiff, <br><br> -v- <br><br> LAL FAMILY CORPORATION and LAL FAMILY PARTNERS L.P., <br><br> Defendants, <br><br> and <br><br> THE ESTÉE LAUDER COMPANIES INC., <br><br> Nominal Defendant. | Civil Action No. 1:23-cv-9265 <br><br> (*Jury Trial Demanded*) |

## COMPLAINT

Plaintiff Andrew E. Roth ("Roth") by his attorneys, Ostrager Chong Flaherty & Broitman P.C., complaining of defendants, alleges upon information and belief as to all paragraphs except paragraph 1, as follows:

1. Plaintiff Roth is a New York resident who is the owner of Class A Common Stock, $.01 par value ("Class A Common Stock") of The Estée Lauder Companies Inc. ("Estée Lauder" or the "Company").

2. Estée Lauder, a nominal defendant herein, is a Delaware corporation with its principal place of business at 767 Fifth Avenue, New York, NY 10153.

3. Defendant LAL Family Corporation ("LALFC") is a Delaware corporation with a business address at 767 Fifth Avenue, New York, NY 10153. LALFC is the sole general partner of LAL Family Partners L.P. ("LALFP").

4. Defendant LALFP is a California limited partnership with offices at 767 Fifth Avenue, New York, NY 10153.

5. At all relevant times, LALFP had direct beneficial ownership, and as the sole general partner of LALFP, LALFC had indirect beneficial ownership, of greater than 10% of the Company's outstanding Class A Common Stock, and each of LALFP and LALFC therefore were statutory insiders owing fiduciary duties to the Company not to engage in speculative short-swing transactions.

6. At all relevant times, each of LALFP and LALFC beneficially owned over 80 million shares of the Company's Class B Common Stock, $.01 par value ("Class B Common Stock"), representing over 54% of the combined voting power of the outstanding Class A Common Stock and Class B Common Stock, providing LALFP and LALFC with voting control of the Company. As alleged *infra* in paragraphs 12 through 19, LALFP and LALFC were controlling stockholders of the Company when LALFP and LALFC engaged in short-swing transactions in the Company's Class A Common Stock, resulting in short-swing profits that LALFP and LALFC must disgorge to the Company.

## JURISDICTION AND VENUE

7. This action is brought by Roth on behalf of Estée Lauder pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b) ("§16(b)" or "Section 16(b)") to obtain disgorgement of profits that LALFP and LALFC realized in "short-swing" transactions in Estée Lauder Class A Common Stock in violation of that statute.

Jurisdiction of this court and venue in this District are proper pursuant to 15 U.S.C. § 78(a)(a) in that certain of the acts underlying this action occurred in this District.

## THE GOVERNING LAW

8. Section 16(b) of the Exchange Act provides that if an issuer's directors, officers, and any person, while beneficially owning more than 10% of a registered class of equity securities of an issuer, purchases and sells, or sells and purchases any equity security of such issuer within a period of less than six months ("short-swing transactions"), any profits arising from those transactions are recoverable by the issuer or by a shareholder suing on its behalf.

9. The statute confers on securities issuers a legal right, grounded in common law, that makes such persons "constructive trustees" of the corporation with a fiduciary duty not to engage in short-swing transactions of the issuer's stock.

10. SEC Rule 16a-1(a)(2) promulgated under the Exchange Act defines the term "beneficial owner" for purposes of reporting ownership and transactions under Section 16(a) of the Exchange Act and for purposes of determining disgorgeable short-swing profits. For these purposes, a "beneficial owner" is any person who has or shares a direct or indirect pecuniary interest in an equity security of the issuer. The term "pecuniary interest" is defined as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 CFR 240.16a-1(a)(2)(i).

11. Defendants garnered short-swing profits in violation of Section 16(b) disgorgeable to the Company in the transactions hereinafter set forth.

## LAUDER FAMILY CONTROL

12. LALFP and LALFC are controlling stockholders of the Company. The Company's 2021 proxy statement filed with the Securities and Exchange Commission ("SEC")

on September 24, 2021 ("2021 Proxy Statement"), reports that LALFP and LALFC beneficially owned 82,437,628 shares of the Class B Commons Stock, representing 54.4% of the combined voting power of the outstanding Class A Common Stock and Class B Common Stock as of July 31, 2021.  The Company's 2022 proxy statement filed with the SEC on September 29, 2022 ("2022 Proxy Statement"), reports that LALFP and LALFC beneficially owned 80,437,628 shares of the Company's Class B Common Stock as of July 31, 2022, representing 54.1% of the combined voting power of the outstanding Class A Common Stock and Class B Common Stock. LALFP and LALFC maintained voting control of the Company when they engaged in the short-swing transactions hereinafter set forth, including when the Company repurchased shares of Class A Common Stock from May 2021 through May 2022 .

       13.     LALFP is a party to the Stockholders' Agreement (the "Stockholders' Agreement"), dated November 22, 1995, as amended, that supports Lauder family control of the Company.  The stockholders who are parties to the Stockholders' Agreement have agreed to vote in favor of the election of Leonard A. Lauder (or one of his sons), Ronald S. Lauder (or one of his daughters), and one designee of each as directors of the Company.  *See*, 2022 Proxy Statement, p. 18, 2021 Proxy Statement, p. 19, and Exhibits 10.1 to 10.1g of the Company's Form 10-K for the fiscal year ended June 30, 2022.  LALFP and LALFC act as a control group with the other Lauder family members to exercise control over the management and affairs of the Company, as disclosed in the Company's SEC filings.

       14.     The Company's Class B Common Stock provides the Lauder family, including LALFP and LALFC, with super voting rights that enable them to control the company.  Each share of Class A Common Stock entitles the holder to one vote on each matter submitted to a vote of the Company's stockholders, and each share of Class B Common Stock entitles the

holder to ten votes on each matter submitted to a vote of the Company's stockholders, including the election of directors of the Company. Each share of Class B Common Stock is convertible into one share of Class A Common Stock. *See,* Schedules 13G, Amendment Nos. 17, filed by LALFP and LALFC with the SEC on February 10, 2023 at Item 4(b).

15. The Company has regularly disclosed that the Lauder family controls the Company. For example, the 2021 Proxy Statement discloses the following under the heading "Lauder Family Control":

> Our Company was founded over 75 years ago by Estée and Joseph Lauder, and subsequent generations of Lauders have had <u>significant involvement in the business and management</u> of the Company. For almost 50 years, the business was run as a private family enterprise. Since our initial public offering in 1995, we have been a publicly traded, <u>family-controlled company</u> that continues to benefit from the Lauder family's demonstrated dedication and commitment to its long-term success. The members of the Lauder family are connected to the Company not just financially through their ownership of common stock but just as fundamentally through their historical <u>legacy of long-term family stewardship that continues today</u>. At present, both of Estée and Joseph Lauder's sons, Leonard A. Lauder and Ronald S. Lauder, are Executive Officers and members of our Board of Directors. Leonard Lauder is Chairman Emeritus, and Ronald Lauder is Chairman of Clinique Laboratories, LLC. Leonard Lauder's son William P. Lauder is Executive Chairman, and Ronald Lauder's daughter Jane Lauder is Executive Vice President, Enterprise Marketing and Chief Data Officer. William Lauder and Jane Lauder also serve on our Board of Directors. Ronald Lauder's daughter Aerin Lauder is the Style and Image Director for the Estée Lauder brand.

2021 Proxy Statement at p. 22 (emphasis added). *See also*, 2022 Proxy Statement at p. 21.

16. The Company's recent Prospectus Supplement filed May 10, 2023 includes the following disclosure:

> <u>We have been controlled by the Lauder family since the founding of our Company</u>. Members of the Lauder family, some of whom are directors, executive officers and/or employees, beneficially own, directly or indirectly, as of April 26, 2023, shares of our Company's Class A Common Stock and Class B Common Stock having <u>approximately 84% of the outstanding voting power of the Common Stock</u>.

Prospectus Supplement at p. S-4 (emphasis added).  *See also*, Company's Prospectus Supplement filed March 3, 2021 at S-4.

17. The Company's Annual Report on Form 10-K for the fiscal year ended June 30, 2022, filed with the SEC on August 24, 2022 includes the following risk factor:

> ***We are controlled by the Lauder family. As a result, the Lauder family has the ability to prevent or cause a change in control or approve, prevent or influence certain actions by us.***
>
> As of August 17, 2022, members of the Lauder family beneficially own, directly or indirectly, shares of the Company's Class A Common Stock (with one vote per share) and Class B Common Stock (with 10 votes per share) <u>having approximately 84% of the outstanding voting power of the Common Stock. In addition, there are four members of the Lauder family who are Company employees and members of our Board of Directors</u>.
>
> <u>As a result of their stock ownership and positions at the Company, as well as our dual-class structure, the Lauder family has the ability to exercise significant control and influence over our business</u>, including all matters requiring stockholder approval (e.g., the election of directors, amendments to the certificate of incorporation, and significant corporate transactions, such as a merger or other sale of our Company or its assets) for the foreseeable future. In addition, if significant stock indices decide to prohibit the inclusion of companies with dual-class stock structures, the price of our Class A Common Stock could be negatively impacted and could become more volatile.
>
> ***We are a "controlled company" within the meaning of the New York Stock Exchange rules and, as a result, are relying on exemptions from certain corporate governance requirements that are designed to provide protection to stockholders of companies that are not "controlled companies."***
>
> The Lauder family and their related entities own more than 50% of the total voting power of our common shares and, as a result, we are a "controlled company" under the New York Stock Exchange corporate governance standards. As a controlled company, we are exempt under the New York Stock Exchange standards from the obligation to comply with certain New York Stock Exchange corporate governance requirements, including the requirements that (1) a majority of our board of directors consists of independent directors; (2) we have a nominating committee that is composed entirely of independent directors with a written charter addressing the committee's purpose and responsibilities; and (3) we have a compensation committee that is composed entirely of independent directors with a written charter addressing the committee's purpose and responsibilities.

> While we have <u>voluntarily caused</u> our Board to have a majority of independent directors and the written charters of our Nominating and ESG Committee and the Compensation Committee to have the required provisions, we are not requiring our Nominating and ESG Committee and Compensation Committee to be comprised solely of independent directors. As a result of our use of the "controlled company" exemptions, investors will not have the same protection afforded to stockholders of companies that are subject to all of the New York Stock Exchange corporate governance requirements.

Form 10-K at p. 24 (emphasis added).  *See also*, Company's Form 10-K for the fiscal year ended June 30, 2021 at p. 24.

18. By virtue of their voting power and control, LALFP and LALFC are presumed to have an indirect pecuniary interest in the shares repurchased by the Company and are liable to the extent of their pecuniary interest arising from such repurchases and short-swing sales made by LALFP unless they can show they could not cause or prevent the Company's repurchases. *See,* Brief of the SEC as Amicus Curiae, pp. 26-27, *Feder ex rel. Ivax Corp. v. Frost* 220 F.3d 29 (2d Cir. 2000) (the "Amicus Brief").

19. LALFP and LALFC garnered short-swing profits in violation of Section 16(b) disgorgeable to the Company in the transactions hereinafter set forth.

## DEFENDANTS' PURCHASE AND SALE TRANSACTIONS

20. In a Form 4 filed with the SEC on November 18, 2021, LALFP and LALFC reported sales by LALFP of 2,000,000 shares of the Company's Class A Common Stock at a price per share of $342.23 on November 17, 2021.

21. In Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K, the Company reported open market repurchases as follows:

| Repurchase Date | # of Shares Repurchased | Average Repurchase Price Per Share | Source Document |
|---|---|---|---|
| May 2021 | 529,363 | $298.18 | Form 10-K for the fiscal year ended June 30, 2021 |
| June 2021 | 532,633 | $303.55 | |

| Repurchase Date | # of Shares Repurchased | Average Repurchase Price Per Share | Source Document |
|---|---|---|---|
| July 2021 | 436,600 | $321.27 | Form 10-Q for the quarter ended September 30, 2021 |
| August 2021 | 353,202 | $328.44 | |
| September 2021 | 800,000 | $330.71 | |
| October 2021 | 843,000 | $314.99 | Form 10-Q for the quarter ended December 31, 2021 |
| November 2021 | 650,462 | $338.56 | |
| January 2022 | 838,246 | $325.44 | Form 10-Q for the quarter ended March 31, 2022 |
| February 2022 | 365,988 | $303.78 | |
| March 2022 | 673,161 | $273.06 | |
| April 2022 | 616,083 | $266.80 | Form 10-K for the fiscal year ended June 30, 2022 |
| May 2022 | 338,189 | $244.73 | |

22.     LALFP and LALFC are controlling stockholders of the Company and have the opportunity, directly or indirectly, to profit or share in any profit derived from the Company's repurchases identified herein. 17 CFR 240.16a-1(a)(2)(i).  LALFP and LALFC had an approximate 23% indirect pecuniary interest in the Company's repurchases, measured by their percentage ownership of the combined Class A and Class B Common Stock, based upon disclosures in the Company's 2021 and 2022 proxy statements.  *See*, 2021 Proxy Statement, p. 36 and 2022 Proxy Statement, p. 35.

23.     By engaging in the short-swing transactions identified herein, LALFP and LALFC breached the trust and fiduciary duty that they owed to the Company to refrain from engaging in short-swing trading in the Company's Common Stock.

24. Matching LALFP's sales with the Company's repurchases, each of LALFP and LALFC realized short-swing profits of at least $56.7 million that are disgorgeable to the Company. A computation of the disgorgeable short-swing profits is shown in annexed **Exhibit A.**

**AS AND FOR A CLAIM FOR RELIEF<br>AGAINST THE LALFP AND LALFC**

25. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 24 *supra*, as if fully set forth herein.

26. At all relevant times, each of LALFP and LALFC was a greater than 10% beneficial owner of Estée Lauder Class A Common Stock and had a direct or indirect pecuniary interest in the profits derived from the short-swing transactions effected by LALFP and LALFC.

27. The matching of sales by LALFP in November 2021 with repurchases by the Company during the period May 2021 to May 2022 disclosed in the Company's Forms 10-Q and 10-K filed with the SEC and covering such period, yields short-swing profits of at least $56.7 million.

28. Accordingly, Plaintiff is entitled to damages against LALFP and LALFC in an amount of at least $56.7 million.

**ALLEGATIONS AS TO DEMAND**

29. On April 20, 2023, plaintiff made demand upon Estée Lauder to commence this lawsuit. In a letter dated June 19, 2023, the Company's counsel advised that the Company would not take action.

WHEREFORE, Plaintiff demands judgment on behalf of Estée Lauder against defendants, as described above, plus attorneys' fees, interest, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 20, 2023

                Yours, etc.

                OSTRAGER CHONG FLAHERTY
                  & BROITMAN P.C.

                By:   */s/ Glenn F. Ostrager*
                     Glenn F. Ostrager
                     Joshua S. Broitman
                     Roberto L. Gomez

                437 Madison Avenue Fl. 24
                New York, New York 10022-7035
                (212) 681-0600

                *Attorneys for Plaintiff Andrew Roth*